**Marsico v. The Patriot News Co.**

C.P. of Dauphin County, no. 1584 S 1993.

*Charles E. Schmidt Jr.,* for plaintiff.
*John C. Sullivan,* for defendants.

KLEINFELTER, *J.,*[1] August 2, 1996—The present matter before the court is the motion for summary judg-

---

1. Judges Lewis and Clark recused themselves from participation in this decision.

ment of defendants, The Patriot News Company and Jack Sherzer, to the complaint of plaintiff, Francis A. Marsico. According to the records and pleadings, the factual background is the following. In June 1989 Marsico received primary physical custody of his 9-year-old daughter.[2] The child's primary caretaker for the previous six years had been her mother and Marsico's former wife, Linda Marsico. Shortly after taking custody of his daughter, Marsico obtained a court order to terminate his obligation to pay child support. The termination order also stated that "all arrears to stand," which apparently was in response to Linda's request that she be paid any money owed to her by Marsico. (F. Marsico dep.—exhs. 16 and 17.)

In January 1990 Marsico received notice from the Dauphin County Domestic Relations Office ("DRO") that he was in arrears of child support in the amount of $796. (F. Marsico dep.—exh. 18.) Several days later, Marsico wrote a letter to DRO wherein he advised DRO that he had custody of his child and that his records indicated that he did not owe any back support monies. (F. Marsico dep.—exh. 19.) In early September 1991 a court order was issued summoning Marsico to a conference on September 19, 1991 with a DRO enforcement officer. (F. Marsico dep.—exh. 20.) Marsico appeared at DRO on that date. The DRO officer subsequently arrested and incarcerated Marsico on charges that he refused to pay the alleged arrearage. He was released from prison that same day after Linda Marsico signed a statement saying that she "wish[ed]

---

2. Custody was transferred to Marsico through mutual agreement between him and the child's mother.

to drop all arrears owed to me at this time." (F. Marsico dep.—exh. 26.) Some months later Marsico's arrest was reported in a series of articles and two editorials written and published by defendants.

The first article appeared on April 26, 1992. Headlined "County takes heat off deadbeat parents," the initial article reported that procedural changes within DRO had resulted in "virtually stripp[ing] the ability of the domestic relations office to threaten punishment to those who refuse to pay support." (See complaint—exh. "A.") The article began with the following paragraph:

"Dauphin County judges and officials, bowing to pressure in part because of a case involving a state legislator's brother,[3] are scaling back enforcement efforts they take to get people to pay child support."

The article then reports that "President Judge Warren G. Morgan, who is responsible for setting county domestic relations department policy, acknowledged it was the arrest of Rep. Marsico's brother in September 1991 and threats of legal action that sparked a review of enforcement."

The article also contains a statement by Marsico's brother, Representative Ronald S. Marsico, in which he denied having "done anything official" on behalf of his brother. The report has a disclaimer to that effect by Marsico as well. In addition, a brief paragraph describes Marsico's position regarding the justifiability of his arrest:

"Frank Marsico said [DRO] enforcement officer Mike Gulick was abusive toward him and the warrant for

---

3. Plaintiff is the brother of State Representative Ronald S. Marsico.

support owed—around $800—had expired. Frank Marsico said even though he pointed out that he had custody of his daughter, Gulick took him to jail. His ex-wife got him released from jail that day, he said." (Complaint—exh. "A.")

During the following six weeks, defendants published six articles and two editorials that dealt with the issue of relaxed DRO enforcement procedures. The news accounts also cited Marsico and his brother's involvement in the changes.[4] (Complaint—exhs. "B" through "I.") Several of the publications briefly presented Marsico's challenge to the justifiability of his treatment by DRO. (Complaint—exhs. "A," "B," "C," and "E.")

On April 23, 1993, Marsico filed the present action with a complaint containing four counts. The first two counts are actions in false light invasion of privacy against each defendant, individually. In Counts III and IV, Marsico charges each defendant, individually, with defamation. Marsico bases his actions on claims that the defendants' publications defamed his character by indicating that he was a deadbeat parent who improperly used his brother's political influence to avoid the appropriate punishment for his alleged delinquency in paying child support. He contends that the newspaper stories further defamed him by implying that the alleged pressure exerted by his brother on his behalf led to

---

4. The publications can be generally characterized as describing the substantial decline in collections of overdue support payments because of the new DRO policies and the consequences to the children of "deadbeat parents." All of the articles and both editorials referred to Marsico's incarceration as an initiating factor in revising DRO's enforcement procedures. They also noted that Marsico's brother was a state legislator. (See complaint—exhs. "B" through "I.")

the relaxation of DRO's enforcement procedures, which, in turn, permitted him and other deadbeat parents to ignore their court-ordered financial obligations to their children. Plaintiff avers that all of the defamatory statements regarding his conduct in this incident are false.

Defendants filed an answer with new matter to the complaint on October 7, 1993. Plaintiff replied to the new matter on November 11, 1993. Defendants filed the motion for summary judgment currently before us on December 12, 1995. The motion was argued before an en banc court in March 1996. For the following reasons we will deny the motions.

Defendants make two arguments in support of their motion for summary judgment against the claim of defamation. They maintain that the plaintiff has not provided specific evidence of the falsehood of the challenged statements, and, secondly, the challenged statements are insulated from liability because they provide "fair and accurate" reports of the incidents surrounding Marsico's arrest and the new DRO procedures arising from his experience. In moving for summary judgment against the charges of false light invasion of privacy, defendants contend that Marsico has not alleged the material facts necessary to demonstrate that not only were the challenged statements false but they were made with the knowledge of their falsity or with reckless disregard as to their truth or falsity. We will address each argument seriatim.

Defendants begin their challenge to the action in defamation by contending that the news accounts in question contained matters of public concern. They maintain that the publications dealt with the relaxation of DRO's

procedures of enforcing court-ordered support payments and the significantly lower collections as a result of such changes. Additionally, defendants aver, because Marsico's arrest and incarceration and his brother's "possible involvement in the case" precipitated the changes, those events were also of public concern. Under those circumstances, defendants state, Marsico, although a "private-figure plaintiff," has the burden of proving the falsity of the alleged defamatory statements. *Philadelphia Newspapers Inc. v. Hepps,* 475 U.S. 767, 777, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). Defendants contend that Marsico cannot meet this burden of proof because he has not pleaded any specific facts to demonstrate the falsity of the publications.

Defendants maintain that the accuracy of the newspaper accounts in regard to Marsico's nonpayment of support is substantiated by DRO and court records. Defendants also indicate that they presented a balanced treatment of the justifiability of Marsico's incarceration by "fully air[ing] plaintiff's viewpoint" in four of the articles.[5] Furthermore, defendants contend, even though the records justify characterizing Marsico as a deadbeat parent for failure to pay back support, the articles never expressly described him as such. Defendants additionally assert that plaintiff's arrest and imprisonment clearly resulted in the relaxation of DRO's enforcement procedures and the subsequent substantial decline in collections of back support payments. As for the accounts of the involvement of Marsico's brother in these changes, defendants state, these reports cannot be considered defamatory to Marsico himself. Thus, defen-

---

5. See complaint—exhs. "A," "B," "C," and "E."

dants conclude, summary judgment is warranted in the defamation action.

We disagree. We find that a genuine issue of material fact exists regarding whether defendants' newspaper accounts defamed Marsico. 42 Pa.R.C.P. 1035(b). We begin with the determination that although the news accounts did not expressly call Marsico a deadbeat parent, Marsico may demonstrate to a fact-finder that such an inference can be made. Marsico has submitted a report from a linguistics expert who examined all of the articles and concludes that a reader could reasonably infer from the publications that Marsico was a deadbeat parent. The expert indicates that in presenting Marsico's "claim" regarding his arrest and incarceration, the language in the news account casts some doubt on the veracity or validity of his viewpoint of the incident. The expert's review accords with the holding by the courts that a defamatory meaning may be ascertained by reading a communication in its entire "context." *Brophy v. Philadelphia Newspapers Inc.,* 281 Pa. Super. 588, 594, 422 A.2d 625, 629 (1980). "The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. *Id.* (citation omitted) In this case, based on the analysis of the linguistics expert, the plaintiff may convince a fact-finder that the news reports of his experience, when read within the context of the entire article, can produce the "impression" that he was a deadbeat parent.

We further find that the expression "deadbeat parent" clearly has a defamatory meaning in that it can expose a person labeled as such to "ridicule" and "contempt."

*Id.* The term is generally used to refer to a parent who not only disobeys the law by refusing to provide court-ordered financial support but who also seriously neglects his or her responsibilities to his or her children. Defendants' newspaper accounts of deadbeat parents portray them in just such a manner. For example, one of the articles at issue, dated May 7, 1992, is headlined "Child suffers when parent ignores support order." (Complaint—exh. "F.") We also find that the accounts of the involvement of Marsico's brother in this incident have a defamatory meaning where Marsico is concerned. These reports enhance the image of a deadbeat parent by indicating that the parent will use his brother's political influence to avoid obeying the law.

We next address defendants' argument that Marsico cannot provide sufficient evidence to demonstrate that "deadbeat parent" is a false characterization of him. We find that this issue is sufficiently raised by the fact that Marsico had custody of the child for whom he allegedly owed support payments for over two years prior to his arrest. There appears to be no dispute that during this period Marsico financially supported his daughter. Arguably, therefore, Marsico will likely not be considered by a fact-finder as a deadbeat parent. Marsico's alleged failure to pay the arrears, in other words, apparently did not leave his child bereft of adequate financial support and in risk of being placed in the welfare system.[6]

---

6. Defendants indicate such a meaning for a deadbeat parent in the editorial of April 29, 1992 when they state that the custodial "parents who don't receive payments usually end up on welfare." (Complaint—exh. "C.")

Finally, with regard to the falsity of the reports that Marsico's brother exerted pressure on certain authorities, we must consider the fact that after extensive discovery little or no evidence has been provided to show that such events occurred. Defendants can only substantiate this account with evidence that is tenuous at best. They point out that a DRO enforcement officer claims to have seen a letter from Representative Marsico, but no one has been able to produce this document. In addition, no one in that office can recall any contact from Marsico's brother. Thus, summary judgment is not warranted.

In denying defendants' motion, we take into consideration the recent ruling by our Supreme Court in *Ertel v. The Patriot-News Company,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996), with regard to deciding whether a motion for summary judgment should be granted:

"Thus, we hold that a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."

We also note that the United States Supreme Court has already made a similar ruling when a motion for summary judgment is reviewed in a media libel case. In *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 11 L.Ed.2d 686 (1986), the court determined that "a party opposing a properly supported motion for summary judgment may not rest upon the

mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." (citation omitted) In this case, we find that plaintiff has provided sufficient specific facts to bring the issue of whether defendants' characterization of him as a deadbeat parent was false.

We now turn to defendants' contention that they cannot be liable for defamation because their publications were "privileged" by being "fair and accurate" reports of judicial and administrative proceedings. Defendants find support for this argument in *Mosley v. Observer Publishing Co.,* 427 Pa. Super. 471, 476, 629 A.2d 965, 967 (1993), where the court stated:

"If the newspaper account is fair, accurate and complete, and not published solely for the purpose of causing harm to the person defamed, it is privileged and no responsibility attaches, even though information contained therein is false or inaccurate. Further, it is not essential that the government proceedings, or, as in this case, the official report, be set forth verbatim by the newspaper. A summary of substantial accuracy is all that is required."

It should be noted that the "privilege" is "qualified." It can be lost if it is abused by reports that inaccurately or unfairly depict the proceeding. *Id.* at 479, 629 A.2d at 969.

To test the substantial accuracy of a report, one must determine whether its " 'gist' or 'sting' is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced." *Oweida v. Tribune-Review Publishing Co.,* 410 Pa. Super. 112, 129, 599 A.2d 230, 239 (1991). In this case,

the test would be whether the effect "on the mind of the recipient" of the news accounts would be essentially the same as that produced by the true proceedings leading to Marsico's arrest and incarceration as well as to the changes in DRO's enforcement procedures.

Defendants maintain that they accurately reported the proceedings surrounding Marsico's incarceration and the changes in DRO's enforcement procedures that resulted from Marsico's experience. Defendants point out that the record itself substantiates the accounts in their articles. A court order was issued for Marsico's arrest based on arrears owed by him for child support. Defendants maintain that even if the publications regarding Marsico could be construed as falsely portraying him as a deadbeat parent, "the fact remains that he was listed in domestic relations office records as owing child support arrearages for over four years." According to defendants, "Sherzer merely reported the positions of plaintiff and the county regarding plaintiff's arrest, which arrest served as 'a catalyst to change public policy' regarding the manner in which support delinquencies were handled." Thus, defendants conclude, they can properly raise the defense of privileged communications here, and the defamation action should be dismissed.

We disagree. Sufficient evidence exists to go toward proving that the actual circumstances underlying Marsico's arrest and incarceration differ considerably from the "gist" or mental impression produced by defendants' news accounts. *Oweida, supra* at 129, 599 A.2d at 239. The facts indicate that the court order calling for Marsico's arrest and imprisonment was issued by Mike Gulick, the DRO enforcement officer assigned to Marsico's case. Gulick was apparently provided with a rubber stamp signature of the judge in this court assigned

to domestic relations issues.[7] Although a mere functionary in DRO, Gulick seems to have had unbridled authority to issue warrants of arrest summarily. Thus, there is sufficient evidence to demonstrate that on the day Marsico reported for the conference to discuss the alleged arrearage, Gulick carted him off to jail, as it were, without giving Marsico a fair opportunity to explain his position.

Furthermore, while the evidence may suggest that Marsico's experience resulted in the change of DRO's enforcement procedures, the change quite possibly resulted from reasons other than that frequently cited by defendants, that being the intervention of Marsico's brother. Marsico's attorney sent a letter protesting DRO's illegal and "outrageous" treatment of Marsico at the time of his arrest and incarceration. (F. Marsico dep.—exh. 38.) Additionally, Marsico has provided evidence that other persons received treatment by DRO similar to that which he claims was given him, and these persons complained. Accordingly, Marsico has evidence to demonstrate to a fact-finder that the events leading to the changes in DRO's enforcement procedures very possibly were instituted out of concern that parents accused of owing support were not receiving their constitutional right to due process.

Interestingly, with regards to this topic, one of defendants' editorials explains the need to balance due process rights with the right of a child to financial support. (Complaint—exh. "C.") Yet we do not find this discussion elsewhere in the challenged articles. Thus, because a genuine issue exists regarding the basis for DRO's arrest and incarceration of Marsico as well as for its subsequent procedural changes, we cannot

7. Judge Clarence C. Morrison.

grant summary judgment on grounds that defendants accurately and fairly reported the events relating to plaintiff.

Finally, defendants challenge Marsico's action in invasion of privacy for placing him in a false light. Defendants maintain that Marsico cannot prove with clear and convincing evidence that defendants published the challenged articles knowingly or with reckless disregard of their falsity with regard to plaintiff. *Larsen v. Philadelphia Newspapers,* 375 Pa. Super. 66, 543 A.2d 1181 (1988), *appeal denied,* 520 Pa. 597, 552 A.2d 251 (1988). Defendants also claim that Marsico cannot prove malice. *Id.*

We disagree. As we discussed above, Marsico has provided sufficient evidence to argue before a fact-finder that he was not a deadbeat parent, that he may have been illegally incarcerated, and that his brother never improperly intervened on his behalf. Because these facts may have been available to defendants at the time they wrote the publications at issue, a genuine issue exists regarding whether they published the news accounts with reckless disregard for the truth. As for demonstrating malice, the plaintiff may prove this element upon demonstrating that defendants knowingly printed falsehoods about Marsico.

Accordingly, we enter the following .

## ORDER

And now, August 2, 1996, defendants' motions for summary judgment to plaintiff's actions in defamation and false light invasion of privacy are denied.