## Scheifele v. Consoli

C.P. of Berks County, no. 1396-93 A.D.

*Lynn Erickson*, for appellants.
*Christopher A. Stump*, for appellee.

STALLONE, *J.*, July 7, 1997—This is a medical negligence action arising out of the performance of an allegedly unnecessary hysterectomy upon appellant Roxanne Scheifele by the appellee, Debra P. Consoli, M.D.[1] Because the issue for appellate review is whether this court erred in granting summary judgment in favor of Doctor Consoli and because of the fact that the appellants are now out of court as a result of our ruling,

---

1. In their complaint, the appellants named Community General Hospital, the appellee and several other physicians as party defendants. However, they subsequently agreed to dismiss Community General Hospital as a party defendant pursuant to a written stipulation of counsel approved by this court on July 28, 1995. Thereafter, they agreed to dismiss the other physicians as party defendants pursuant to a written stipulation of counsel approved by this court on November 28, 1995.

we will set forth in some detail the facts justifying the relief granted.

On May 27, 1993, the appellee served written expert witness interrogatories and a request for production of documents upon the appellants, who were represented at that time by Michael Mayro, Esquire. In her interrogatories, appellee requested the appellants to identify their expert witnesses who would testify at trial and the substance of their opinions relative to the appellants' medical negligence claim. However, the appellants did not respond.

As a result, the appellee filed a motion to compel discovery on February 18, 1994. Because the appellants failed to respond to that motion, we granted the same on March 17, 1994.[2]

The appellants failed to comply with that order as well. As a result, the appellee filed her first motion for sanctions. The appellants failed to respond to that motion. Accordingly, we entered an order on September 1, 1994, granting that motion by awarding attorney's

---

2. The text of that order is as follows:

And now, March 17, 1994, the above-named defendants, Debra P. Consoli M.D., Steven K. Kohl M.D., and Jeffrey C. Zerbe M.D., individually and trading as Ebersol-Kohl-Zerbe Associates, having filed a motion to compel answers to interrogatories and request for production of documents, and the plaintiffs having failed to file and serve upon defendants a brief in opposition to defendants' motion in accordance with B.R.C.P. 211.2(d) and the plaintiffs having failed to request an extension of time in which to file and serve their briefs upon defendants, it is ordered as follows.

The defendants' motion is granted. Plaintiffs shall have 90 days from the date of this order to fully answer defendants' interrogatories and request for production of documents or suffer appropriate sanctions upon motion by the defendants.

fees to the appellee in the sum of $500.[3] Because the appellants failed to pay that sum, the appellee filed a second motion for sanctions together with her first motion for summary judgment.

On October 5, 1994, Attorney Mayro, who had previously succeeded James J. Buckley, Esquire, withdrew his appearance for the appellants and Lynn Erickson, Esquire, entered hers, and she immediately filed a motion for reconsideration of this court's September 1, 1994 order imposing sanctions. And although appellants, at the same time, also provided some answers to the appellee's expert witness interrogatories, they did not identify any expert witnesses but stated instead that:

"Plaintiff [sic] has not yet determined whom they will call as expert witnesses at the trial of this case. As plaintiffs' counsel is new to this case, the inves-

---

3. The text of that order is as follows:

And now, September 1, 1994, upon consideration of the motion for sanctions filed by defendants Debra P. Consoli M.D., Thomas D. Ebersole M.D., Steven J. Kohl M.D., and Jeffrey C. Zerbe M.D., individually and trading as Ebersole-Kohl-Zerbe Associates for failure of the plaintiffs to respond to the defendants' discovery requests after having been ordered to do so by the court pursuant to an order entered on March 17, 1994, and it appearing that the plaintiffs have not filed and served upon the defendants their brief in opposition to the motion for sanctions in accordance with B.R.C.P. 211.2(d), and it further appearing that the plaintiffs have not requested an extension of time in which to file and serve their brief of argument in accordance with B.R.C.P. 211.5(a), the motion for sanctions is hereby sustained. B.R.C.P. 211.5(d).

Accordingly, it is ordered that the plaintiffs pay over to the moving defendants the sum of $500 for the attorney's fees incurred in the preparation and filing of the motion for sanctions and supporting brief no later than 30 days following the date of this order.

tigation is continuing and this information will be supplied to defendants as received."

After hearing oral argument on the appellee's second motion for sanctions for failure to pay the counsel fees and appellants' motion for summary judgment, this court denied the appellants' motion for reconsideration of the counsel fee order as well as the appellee's second motion to impose additional sanctions for failure to pay those fees. We denied this latter motion upon the express representation by appellants' counsel that they would disclose the identity of their expert witness and serve expert reports upon appellee's counsel within a "short period of time" following that argument date. Moreover, in response to that representation, the appellee withdrew her first motion for summary judgment.

Because of the appellants' failure to serve any expert report upon the appellee, Doctor Consoli filed a third motion for sanctions, in which she alleged that she not only had not received any such report but that she received no reply from her three additional written requests for the same following the July 6, 1995, argument court date. ·

Appellants attempted to resolve the appellee's third motion for sanctions by entering into the following written stipulation which was approved by this court on November 20, 1996, the same date, incidentally, that was set aside for a hearing and argument on the appellee's third motion for sanctions and which reads as follows:

"It is hereby stipulated between all counsel of record that plaintiffs shall produce their expert report(s) no later than January 6, 1997. *Plaintiffs shall be limited at trial to the testimony of experts that is identified by January 6, 1997. Any plaintiffs' expert whose report*

*is not produced by that date, shall be precluded from offering expert testimony at trial.*" [4]

However, instead of producing their expert report on or before that January 6, 1997, date, appellants' counsel forwarded a cover letter and memorandum to appellee's counsel which read as follows:

"January 6, 1997
"Christopher A. Stump, Esquire
Barley, Snyder, Senft & Cohen LLP
126 East King Street
Lancaster, PA 17602-2893 Re: Scheifele v. Consoli
"Dear Chris:

"Accompanying this letter is the verbal report of Dr. Stephen A. Myers D.O. who reviewed the medicals in the above case and rendered his verbal report to plaintiffs' then counsel. You might recall that I gave both you and the judge his name in his chambers at a previous argument in this case. I had some difficulty in tracking him down, but rather than bore you with the details, I spoke with him in December and he agreed to give a written report feeling certain that (because of the wording on his bill), he had retained the records. I didn't find out until Friday that they could not locate plaintiff's file. I did fax him this memo, and he reiterated to me that if the medical records were as indicated in the memo, his opinion would be as stated. I have sent him plaintiff's medical records and he agreed to promptly issue a written report.

"I am also enclosing the doctor's curriculum vitae in response to the discovery request.

"Finally, will you check with Doctor Consoli for dates and place where we can take her deposition. I will accommodate her as to both time and place.

"Sincerely,
"Lynn Erickson"

---

4. Italic type for emphasis only.

The "memorandum to the file" attached to this cover letter read as follows:

"TO: FILE

"FROM: JGB

"DATE: January 29, 1992

"RE: Roxanne Scheifele

"I had a phone conversation with Steven Meyers on January 20. He indicated to me that in his opinion there were three aspects of the case that very likely amounted to malpractice.

"First: He pointed out to me that the procedure was apparently unnecessary. That is to say there was nothing wrong with Roxanne's uterus. She didn't have the fibroids that were diagnosed. There were indications in the record and specifically the size of the uterus would suggest that it was normal. It was a perfectly normal size. He wants to see the ultrasound report and also the ultrasound pictures themselves to make an analysis as to whether there was any medical basis for the determination to proceed with surgery, but it is his opinion that the surgery was unnecessary. He also notes that because she had had four cesarean section births, the procedure of the cesarean section involved disengaging or separating the bladder from the uterus in order to perform the cesarean, and that each time you do that you generate scar tissue and the bottom line is that this put Roxanne more at risk than someone who had not had exactly the same complications that she had and therefore it is doubly damaging that they did unnecessary surgery. There was apparently no benefit to her and, of course, she was at more of a significant risk of having complications and did in fact have the complications.

"Second: The records of the surgery indicate that they encountered bleeding in the wall of the bladder during the surgery and that they cauterized the bleeding. He indicates that that is specifically not the proper procedure and that the proper procedure in that situation is to legate the bleeding. He indicated to me that apparently the procedure of cauterizing the bladder could in fact weaken it and it is very possible in fact that the fistula eventually developed where the cauterizing took place.

"Third: He indicated that in the post-op in the recovery room, they had some concerns about problems, and they in fact apparently injected 6cc of dye into the bladder as a test and what he indicated to me as far as that is concerned is that this action was an improper way to check for any problem. If you are going to inject dye into the bladder you have to put a lot more than 6cc into it before there is much of a chance that it will leak.

"I spoke with Roxanne and she indicated to me that the ultrasounds were done directly in Dr. Consoli's office by someone in her office. She did not know exactly who did it. She also indicated that she was surprised and concerned. Apparently the ultrasound was not performed externally, as she had expected, but that they in fact inserted an instrument up into her uterus to do the ultrasound.

"NOTE: I spoke with both of them and they have had almost a total cessation in their sexual relations since the surgery.

"She indicated to me that when she went in to see the Dr. about some other things, but that along with this she wanted to find out about having her tubes untied to see whether she could conceive, so the ques-

92

tions relative to an unnecessary surgery is really important.

"JGB/ljm END OF MEMO"

In view of the foregoing, the appellee filed a second motion for summary judgment. In that motion, she averred that the above memorandum did not qualify as an expert report, and that inasmuch as the January 6, 1997, deadline, as agreed to by the parties in the written stipulation dated November 20, 1996, had passed, the appellants were precluded from introducing any expert testimony at trial and that, since the appellants would be unable to prove their case at trial without such evidence, the appellees are entitled to summary judgment as a matter of law. After a hearing and argument, this court entered an order granting that second motion for summary judgment.[5] This timely appeal followed.

As stated at the outset, the sole issue for appellate review is whether this court erred in granting summary judgment in favor of the appellee.

As a result of the recent amendments to our Pennsylvania Rules of Civil Procedure pertaining to summary judgments, the procedure and standard for granting them are now clear. That is that, after the relevant pleadings are closed, any party may move for summary judgment. Pa.R.C.P. 1035.2; see also, *Ertel v. Patriot-News Company*, 544 Pa. 93, 674 A.2d 1038 (1996). In order to grant summary judgment, a reviewing court must not

_____

5. The appellee also filed a fourth motion for sanctions asking this court to preclude the appellants from offering any expert testimony claiming that the appellants failed to produce any expert reports by January 6, 1997, as agreed to in the stipulation. However, because of our disposition of the motion for summary judgment, which was favorable to the appellee, we denied this motion as being moot.

only find an absence of a genuine dispute of a material fact relative to the particular claim for relief being asserted but also determine that the moving party is, therefore, entitled to judgment as a matter of law. *Beach v. Burns International Security Services*, 406 Pa. Super. 160, 593 A.2d 1285 (1991). Accordingly, when a non-moving party responds to a motion for summary judgment which is filed by a party not having the burden of proving the essential elements of the claim at trial, the party having that burden must set forth in the form of a written "response" the evidence which that party has and which is material to the successful outcome of his/her claim to satisfy the court that there is a genuine dispute as to one or more of the material facts necessary to the successful outcome of his/her claim and, therefore, at that point in time the moving party is not entitled to a (summary) judgment as a matter of law. The failure to respond at the summary judgment hearing/argument with such written evidence will justify the court in finding that there is no "genuine dispute" of a material fact and, therefore, since those genuinely undisputed facts favor the moving party who does not have any burden of proof at trial that the moving party is entitled to summary judgment against the non-moving party as a matter of law. *Ertel, supra.*

As applied to the case at bar, the appellee contends that in order to meet their burden at trial, the appellants would have to present expert witness testimony to establish each element of their medical negligence claim, such as duty of care, breach of that duty, causation, and damages, and, therefore, their failure to show the court in writing at the summary judgment hearing/argument that they have such testimony entitles the appellee to (summary) judgment as a matter of law.

There is no doubt that the November 20, 1996 written stipulation clearly required the appellants to serve an

94

expert report upon the appellee no later than January 6, 1997, and that, in the event the appellants failed to do so, they would not be permitted to submit any expert testimony at trial. And, although appellants now argue that the written memorandum sent to appellee's counsel on January 6, 1997 is sufficient to constitute an expert report, it clearly is nothing more than a memorandum to the file generated by appellants' prior counsel, James G. Buckley, Esquire, regarding a conversation which he allegedly had with appellants' proposed expert witness Steven A. Meyers D.O., five years earlier. Appellants' contention is also belied by the fact that, in the first paragraph of her cover letter, appellants' counsel clearly states that "he [Doctor Meyers] agreed to promptly issue a written report." That alone clearly indicates that appellants themselves did not consider the five-year-old memorandum to the file as the expert's report.

These being the findings of this court at the summary judgment hearing/argument, we went on further to determine whether the appellants' medical negligence claim required the proof of an essential element by expert testimony. Generally, a plaintiff must prove medical negligence by expert testimony, unless the matter at issue is so simple and the lack of skill or want of care is so obvious that the determination of negligence is within the range of the ordinary experience and comprehension of a layperson. See *Jones v. Harrisburg Polyclinic Hospital*, 496 Pa. 456, 437 A.2d 1134 (1981). Appellants' claim that Doctor Consoli's performance of a hysterectomy on her was unnecessary and, therefore, medical malpractice does not fall within the latter category. As a result, we conclude that the appellants cannot prove their medical negligence claim at trial without expert testimony. And since they have failed to show this court at the summary judgment hearing/argument that they have evidence sufficient to create a genuine

issue of fact necessary for the appellants to obtain relief at trial on their claim, *i.e.*, that Doctor Consoli breached her duty to the appellants and that that breach caused the injuries and losses for which they seek money damages, they are precluded by law from proceeding further with their claim.

Appellants finally argue that this case can still proceed because they have also made a claim for "lack of informed consent" and that, unlike medical negligence, it does not require expert opinion testimony. However, when we review appellants' complaint and other documents tending to set forth their claim, we find that they have not pleaded any claim based upon that theory for recovery. Rather, the complaint reveals that the appellants' claim is based entirely upon alleged acts of medical negligence committed by the appellee and from which lack of informed consent cannot be reasonably inferred.

And so, for all of the foregoing reasons, we reaffirm our order granting summary judgment in favor of the appellee and respectfully urge the Superior Court of Pennsylvania to deny this appeal.