## Brutto v. Elefante & Margolies P.C.

C.P. of Berks County, no. 96-4484.

*John A. DiGiamberardino,* for plaintiffs.
*Terry Parish,* for defendant.

SCHAEFFER, *S.J.,* May 21, 2001—Before the court is the appeal of Paolo Brutto and Adriana Brutto from an

order of this court dated March 6, 2001, denying their motion for summary judgment and from the summary judgment entered in this matter in favor of Elefante & Margolies P.C., defendant, and against the Bruttos.

The undisputed facts are that the Bruttos went to Charles M. Elefante, Esquire, who practiced law as Charles M. Elefante P.C. and sought to retain Elefante P.C. as their attorney in adopting a child in the Confederation of Independent States, now the Russian Republic.

Mr. Elefante gave the Bruttos a form of agreement under which Elefante P.C. would represent them to this end.

The form of agreement advised the Bruttos that they should read it, seek independent legal advice about it, if they so desired, and if they still wished Elefante P.C. to represent them, to sign it and return it to Elefante P.C. with a $7,000 retainer fee.

The Bruttos signed the form of agreement and returned it to Mr. Elefante with a check dated June 15, 1995 (exhibit D; attached to the defendant's motion for summary judgment), payable to Elefante P.C., for the retainer fee. Mr. Elefante kept the check but returned the form of agreement to the Bruttos with instructions that they should initial each page. Mr. Elefante deposited the check for the retainer fee into the Elefante P.C. checking account on June 23, 1995.

After the Bruttos received the form of agreement back, they, by telephone on July 10, 1995, requested that the defendant, Elefante & Margolies P.C., return the retainer to them. On August 2, 1996, they filed this suit against

Elefante & Margolies P.C. seeking a refund of the retainer fee.[1]

No one ever signed the form of agreement on behalf of Elefante P.C.

The Bruttos assert that the form of agreement was an invitation for them to make an offer, that they did make an offer by signing the form and returning it to Mr. Elefante with a check for the retainer, and that they revoked the offer before Elefante P.C. accepted it. We disagree.

We find that when Mr. Elefante gave the form of agreement to the Bruttos, he made an offer to them, and that by signing the form and returning it to Elefante P.C. with the retainer fee, the Bruttos accepted the offer.

The form of agreement, on page 12, in pertinent part, reads as follows:

"It is expressly understood and agreed, by the undersigned, that the representations, restrictions, conditions, promises and obligations contained in this agreement, constitute a *legally binding contract.* The client(s) expressly agree that their signatures on/in this agreement indicate that they have been informed of *their right to have this agreement independently reviewed by independent counsel of their own choosing, and that they have been offered an opportunity to do so, prior to their signing of this document.* The client(s) expressly agree and understand, that by signing this agreement, they express their willing and unqualified intent to enter into a binding contract." (emphasis in original)

---

1. The Bruttos did not sue Charles M. Elefante, Esquire, or Charles M. Elefante P.C.

The agreement also provided, on page 9, as follows:

"Charles M. Elefante P.C. agrees that the initial retainer fee of $7,000 shall not be deposited until three days after receipt thereof . . . if . . . the undersigned prospective client(s) decide to terminate Charles M. Elefante P.C. as their attorney, *and* so notify Charles M. Elefante P.C. by phone, followed by in writing thereafter, within seven days of Charles M. Elefante P.C.'s receipt of the retainer, then the retainer shall be returned without charge (in its original form), in full, within seven days." (emphasis in original)

Whether two parties enter into a binding contract does not depend on a document signed by both parties. Rather it depends on whether or not they have each agreed to enter into a contract, whether there has been a meeting of the minds. *Shovel Transfer & Storage Inc. v. PLCB*, 559 Pa. 56, 63, 739 A.2d 133, 136 (1999).

A form of agreement presented by one person to another can be an offer even though it is not signed by the offeror. If the offeree accepts the form of agreement as the agreement between them, then a contract is formed. The offeree can accept in writing or otherwise.

In the case at bar, Elefante P.C. gave the form of agreement to the Bruttos, with instructions to read it, seek outside professional help, if they so desired, in interpreting the document, and if they still wanted Elefante P.C. to represent them, to sign it and return it to Elefante P.C. with their check for the $7,000 initial retainer fee.

The Bruttos did so.

We find Elefante P.C. made the Bruttos an offer when Mr. Elefante gave them the form of agreement, even

though Elefante P.C., had not signed the document. The Bruttos accepted the form of agreement as the agreement between the parties, signed it, and returned it to Elefante P.C. with the retainer check.

That is sufficient to make a contract. It was immaterial that Elefante P.C. at no time signed the form of agreement.

We conclude, as a matter of law, that there was a contract between the parties because the form of agreement was specific as to the Bruttos intention. It provided that the Bruttos "expressly agree and understand, that by signing this agreement, they express their willing and unqualified intent to enter into a binding contract." Page 12 of agreement. If the form of agreement was the offer, as we have found it was, the Bruttos accepted that offer and entered into a contract when they signed the form of agreement with the intention to "enter into a binding contract" and then returned it with the retainer check.

The conclusion is supported by the fact that the agreement, as signed by the Bruttos, provided for a cancellation period *to begin* (emphasis added) when Elefante P.C., received the signed agreement with their check for the retainer.

If the Bruttos' signatures on the form of agreement were an offer, not an acceptance, the cancellation provisions as written were meaningless. The Bruttos could have revoked their offer at any time before acceptance, without a cancellation provision.

Only if the Bruttos' actions were an acceptance, not an offer, do the cancellation provisions become meaningful. Then a contract would have come into existence when the Bruttos signed the agreement and returned it to

Elefante P.C., with the check for the retainer, and the cancellation provisions would have been meaningful and important.

An agreement should be construed whenever possible to give meaning to all its provisions, not just some of them. In considering the pertinent clauses of the contract, we are governed by the rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. *Acchione v. City of Philadelphia,* 394 Pa. 622, 149 A.2d 125, 127 (1959). If one construction gives meaning to all the provisions of an agreement and another construction makes one or more of them meaningless and unnecessary, the construction giving meaning to all provisions is to be preferred.

For these reasons we found a contract existed between the parties and that since the Bruttos did not cancel it within the time specified, they are not entitled to a refund of the retainer fee.

We also found that the Bruttos did not sue the right party defendant. Elefante & Margolies P.C. did not assume the debts or liabilities of Charles M. Elefante, Esquire, or Elefante P.C. Therefore, whatever the value of the Bruttos' claim against Mr. Elefante or Elefante P.C., they have no claim against the defendant, Elefante & Margolies P.C. A simple transfer of the assets of a business or professional corporation does not, without more, obligate the purchaser to pay the debts of the transferor.

The agreement of sale between Charles M. Elefante, Esquire, and Elefante P.C., and Leslie A. Margolies, dated July 11, 1995, provided that Leslie A. Margolies would

assume the liabilities of the successor corporation, Elefante & Margolies P.C., but not the liabilities of Charles M. Elefante, Esquire, and/or Elefante P.C.

The Bruttos filed a timely notice of appeal to the Superior Court of Pennsylvania. In their statement of matters complained of on appeal, they raise four issues:

"(1) Whether the court erred as a matter of law and/or abused its discretion by finding that an enforceable contract existed between the plaintiffs and Charles M. Elefante P.C.?

"(2) Whether the court erred as a matter of law and/or abused its discretion by finding that the defendant acquired rights of Charles M. Elefante P.C. to retain the plaintiffs' deposit?

"(3) Whether the court erred as a matter of law and/or abused its discretion by failing to find that the defendant assumed the obligation of Charles M. Elefante P.C. under the theory of successor liability?

"(4) Whether the court erred as a matter of law and/or abused its discretion by finding that the defendant was entitled to retain the plaintiffs' deposit under a theory of quantum meruit?"

The standard of review in cases of summary judgment is well settled. "The appellate court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law." *Electronic Laboratory Supply v. Cullen,* 712 A.2d 304, 307 (Pa. Super. 1998). (citation omitted) "Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law." *Id.;* Pa.R.C.P. 1035.2. However, plaintiffs cannot avoid summary judgment where they have no evidence to support an issue on which they bear the burden of proof.[2] Regardless of plaintiffs' allegations in the pleadings, plaintiffs, when faced with a motion for summary judgment, must show that the evidence they can then produce, with all inferences therefrom drawn in their favor, would permit the finder of fact to render a verdict in their favor. If, under Pa.R.C.P. 1035.2(2), the record contains insufficient evidence of facts to make out a prima facie cause of action or defense, there is no issue to be submitted to a jury.[3]

For the reasons already given, we reject the first, second and third matters complained of on appeal.

Finally, the Bruttos argue that the court erred as a matter of law and/or abused its discretion by failing to find that Elefante & Margolies P.C. had benefited and that it was liable to the Bruttos on a theory of quantum meruit, due to the following facts:

(a) The agreement provided to plaintiffs was not signed by Charles M. Elefante at any time;

(b) The agreement was returned to plaintiffs by defendant for initials as required by defendant's office policy;

---

2. The Supreme Court of Pennsylvania has held that "[A] non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996).

3. *Tenaglia v. Procter & Gamble Inc.,* 737 A.2d 306, 307 (Pa. Super. 1999).

(c) The plaintiffs notified defendant of their intention to revoke any offer that may have been made prior to defendant's departure to Russia to search for adoptable children; and

(d) The plaintiffs never returned the executed agreement to defendant with the initials required by the defendant's office policy.

As we have found, as a matter of law, that (1) a valid contract existed between the parties and (2) the plaintiffs failed to produce evidence of facts to make out a prima facie case for successor liability, appellants' fourth issue lacks merit as well.

For the aforementioned reasons, we respectfully request that the Superior Court affirm the judgment entered in this matter on March 7, 2001.

