**Kalina v. Donato**

C.P. of Berks County, no. 6377-95 A.D.

*Daniel H. Shertzer,* for appellant.

*Eugene C. LaManna* and *Robert R. Reber,* for appellee Roma Ann Donato.

*Daniel E.P. Bausher* and *Kirk L. Wolgemuth,* for appellees Frank Donato and Hayward Stout Inc.

*Arthur K. Hoffman,* for appellee J.C. Ehrlich Co. Inc.

STALLONE, *J.,* April 3, 1998—This action arises out of the sale of a house by the estate of Roma S. Lattemann to the appellant, Marion E. Kalina, and her husband, Andrew (who is now deceased), on October 4, 1993, following the showing of the property on September 17, 1993, and the execution of an agreement of sale by Mr. and Mrs. Kalina and Mrs. Donato, on behalf of the estate of Roma S. Lattemann, on that same date.

One of the appellees is Frank Donato, who at the time was employed as a real estate agent for appellee Hayward Stout Inc., the listing realtor. Another is Mr. Donato's wife, Roma Ann Donato, who is the daughter of Roma S. Lattemann and the administratrix of her probate estate. The remaining appellee is J.C. Ehrlich Co. Inc., who inspected the property and issued a "Wood-destroying insect inspection report." The termite damage that was found at that time in the kitchen and closet and noted on that report was repaired in July 1993, some two months prior to the showing of the property to Mrs. Kalina. This report was obtained by the estate of Roma S. Lattemann for its own use and not as a condition under the terms of the agreement of sale between Mr. and Mrs. Kalina and Mrs. Donato.

Mrs. Kalina claims that in April 1995, which was almost two and one-half years after the real estate closing was held, she discovered extensive termite damage under the living room floor which she alleges the appellees were well aware of and had failed to disclose to her prior to closing. Accordingly, she asserts in her amended complaint filed against Mrs. Donato claims of fraudulent misrepresentation and a violation, based upon the alleged fraudulent misrepresentation, of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, title 73, 73 P.S. §201-1 et seq. (Supp. 1997), as well as breach of contract. Against Mr. Donato and Hayward Stout Inc., she sets forth claims of fraudulent misrepresentation and a violation, based upon the alleged fraudulent misrepresentation, of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, title 73, 73 P.S. §201-1 et seq. (Supp. 1997). And against J.C. Ehrlich, she sets forth claims of negligent misrepresentation and a violation, based upon the alleged

negligent misrepresentation, of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, title 73, 73 P.S. §201-1 et seq. (Supp. 1997).

As a result of recent amendments to our Pennsylvania Rules of Civil Procedure governing summary judgments, any party may move for summary judgment after the relevant pleadings are closed. Pa.R.C.P. 1035.2; *Ertel v. Patriot-News Company,* 544 Pa. 93, 101 n.3, 674 A.2d 1038, 1042 n.3 (1996).[1] In order to grant summary judgment, a reviewing court must find an absence of a genuine dispute of the facts material or essential to the proof of a particular claim, in which event the moving party would be entitled to a judgment on that claim as a matter of law. *Beach v. Burns International Security Services,* 406 Pa. Super. 160, 593 A.2d 1285 (1991). Accordingly, when the non-moving party responds to a motion for summary judgment which is filed by a party not having the burden of proving those essential elements of that claim at trial, the party having that burden of proof at trial must set forth in a written "response"[2] the evidence which he/she has

---

1. Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that there is no genuine issue of a material fact left for trial and, therefore, moving party is entitled to judgment as a matter of law. *Morin v. Traveler's Rest Motel Inc.,* 704 A.2d 1085 (Pa. Super. 1997). These documents are jointly referred to in this opinion as the "summary judgment court record."

2. Pa.R.C.P. 1035.3(a) provides as follows:

"(a) The adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within 30 days after service of the motion identifying

"(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

pertaining to those elements of the claim to satisfy the court that there is a genuine dispute relative to one or more of the facts that must be proven at trial for the moving party to be successful on that claim. If that is done to the satisfaction of the summary judgment court, the moving party is not entitled to summary judgment as a matter of law but the claim is to be referred to the fact-finder for disposition. *Ertel, supra.*

As applied to the case at bar, the appellee contends that Mrs. Kalina, who obviously has the burden of proving all of the elements of her claims at trial, did not present evidence to this summary judgment court that would create a genuine issue or dispute as to whether Mrs. Donato breached her contract with Mrs. Kalina or that Mrs. Donato or any of the other appellees fraudulently or negligently, in the case of J.C. Ehrlich, failed to disclose to Mrs. Kalina the existence of termite infestation in the living room. Therefore, Mrs. Kalina's failure to do so entitles them to summary judgment on all of the claims filed against them.

In order to rule on these summary judgment motions, this court must consider as to Mrs. Donato the elements which, if proven at trial, would constitute a breach of contract and, as to all of the appellees, the elements

---

"(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced."

Accordingly, where a defendant files a motion for summary judgment, the plaintiff, as the party who bears the burden of proof at trial, may not rest upon the mere allegations contained in the pleadings. Instead, the plaintiff must file a response within 30 days after service of the motion identifying evidence in the record which establishes the facts essential to the cause of action which the defendant, as the party who does not bear the burden of proof at trial, cites in the motion as not having been produced. *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 684 A.2d 137 (1996); Pa.R.C.P. 1035.2.

of Mrs. Kalina's claims for fraudulent or negligent misrepresentation and for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

The five elements that are material and, therefore, must be proven for Mrs. Kalina to succeed on a breach of contract claim are: (1) the existence of a valid and binding contract to which she and Mrs. Donato are parties; (2) the essential terms of the alleged contract; (3) her compliance with the terms of the contract; (4) that Mrs. Donato breached a duty imposed upon her by the contract for the sale of the real estate premises; and (5) damages resulting from the breach. *Gundlach v. Reinstein,* 924 F. Supp. 684 (E.D. Pa. 1996).

The four elements that are material and, therefore, must be proven at trial for Mrs. Kalina to establish a claim for fraudulent misrepresentation are: (1) a fraudulent misrepresentation of an alleged fact; (2) an intention by the maker that the recipient will act upon the misrepresentation; (3) a justifiable reliance by the recipient upon the misrepresentation; and (4) that the damage suffered by the recipient was the proximate result of the misrepresentation. *Myers v. McHenry,* 398 Pa. Super. 100, 580 A.2d 860 (1990). The four elements that are material and, therefore, that must be proven for Mrs. Kalina to establish a claim for negligent misrepresentation are: (1) a misrepresentation of a fact without the exercise of reasonable care or competence in obtaining or communicating the information; (2) an intention by the maker that the recipient will act upon the misrepresentation; (3) a justifiable reliance by the recipient upon the misrepresentation; and (4) that the damage suffered by the recipient was the proximate result of the misrepresentation. *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882 (1994).

And in order for Mrs. Kalina to succeed on her claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, she must prove that

the appellees against whom she has made that claim engaged in fraudulent or other deceptive conduct which creates a likelihood of confusion or misunderstanding. Title 73, 73 P.S. §201-2(xxi) (Supp. 1997). That is also true with regard to her claim against J.C. Ehrlich, even though the underlying claim is for negligent and not fraudulent misrepresentation. *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 676 A.2d 1237 (1996).

We will begin our analysis of each of the claims against each one of the four appellees beginning with those filed against Mrs. Donato. Our review of the summary judgment court record reveals that at her deposition, Mrs. Kalina makes reference to Mrs. Donato only two times. First, she testified that Mrs. Donato was present when Mr. Donato took her and her husband on a tour of the house and that, while in the kitchen, Mr. Donato said:

"And he said, Oh, by the way, he said, this floor was spongy, he said, so we had it ripped up. There were termites. And I shouted, termites? He said, yes, but everything is taken care of. Ehrlich gave me a five-year guarantee.

Q. Who was there that day when you had this conversation, you, your husband, Andy, and Frank?

A. And Frank.

Q. And Roma was there as well?

A. Um-hum.

Q. Anyone else present?

A. No.

Q. Okay. Was that the first you learned there had been termite infestation at some point in this house?

A. Yes. I was only once in the house before I bought it that day.

Q. Was there any further discussion at that time about termites then?

A. No. Oh, we took them down to the basement. I call them cellars. And he showed me in the closet how it was infested in there. He opened the doors.

Q. What did you see when he opened the doors? Could you see anything that looked unusual?

A. Well, they put a piece of wood on top of the other wood, in front of it.

Q. Where was this exactly? This was in a closet?

A. Yeah, right at the bottom of the steps there's two closets like with doors on. They're built-in in the side.

Q. It looked like there was new wood in the closet?

A. Yeah. They just put it over the old wood, over the front of it.

Q. Okay.

A. It was ripped out.

Q. Did Frank or Roma give you any paperwork at that point from Ehrlich?

A. No.

Q. Okay. Did Frank or Roma tell you where Ehrlich had found the infestation?

A. Just in the kitchen and in that closet.

Q. Okay. Did he tell you specifically what repairs were done if any?

A. Yes. He said he ripped—they ripped up the whole floor and cleaned it out and all and put new linoleum down.

Q. When you say the whole floor, did he tell you which room or you understood he meant the kitchen?

A. The kitchen, when this conversation went on." (N.T., deposition of Marion E. Kalina, pp. 11-13.)

Secondly, Mrs. Kalina testified that Mrs. Donato was present at the real estate closing held on October 4, 1993. (N.T., deposition of Marion E. Kalina, pp. 17-18.)

It is important to note, however, that at no time did Mrs. Kalina say that Mrs. Donato made any representation to her whatsoever relative to any termite infestation, let alone a representation that could be considered fraudulent or even false, or, for that matter, that would indicate that Mrs. Donato was even aware of any termite infestation in the living room. Therefore, inasmuch as we find no evidence in Mrs. Kalina's "response" to Mrs. Donato's motion for summary judgment, which would create a genuine issue or dispute relative to these facts essential to the successful outcome of Mrs. Kalina's claim of fraudulent misrepresentation against Mrs. Donato, Mrs. Donato is entitled to summary judgment as a matter of law on Mrs. Kalina's underlying claim for fraudulent misrepresentation as well as on her claim for any violation of section 201-2(xxi) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

As to Mrs. Kalina's breach of contract claim against Mrs. Donato, she alleges that Mrs. Donato never informed her of the extent of the structural damage caused by termites, other than in the kitchen and basement closet, and that she failed to provide Mrs. Kalina with a statement from a qualified building contractor as to the structural condition of the termite-infested areas of the house as she says that Mrs. Donato was obligated to do pursuant to the J.C. Ehrlich report. She relies upon the following language contained at the bottom of page 2 of that report:

"Seller acknowledges his responsibility to have areas of visible infestation and/or damage from wood-destroying insects, which are indicated on reverse side, evaluated by a qualified building contractor who shall provide a statement as to necessary repair, and if no repair is required, or necessary repairs are completed, shall have contractor completing said evaluation of re-

pair, issue a statement that all visible permanently affixed wood members are structurally sound and serviceable."

The area of "visible infestation and/or damage from wood-destroying insects" is identified on page 1 of the report as follows:

"Visible wood-destroying insect damage observed, but not necessarily limited to: floor in kitchen and termite tubing found on block in lower level [which was found in a basement closet]."

It is well settled that, in order to determine the obligations of contracting parties, a reviewing court must find them from the language written within the four corners of the contract. *Volunteer Firemen's Insurance Services Inc. v. Cigna Property and Casualty Insurance Agency,* 693 A.2d 1330 (Pa. Super. 1997). And when, as here, the words of the contract are unequivocal, we cannot rewrite the contract or give it a construction that conflicts with the plain, ordinary and accepted meaning of the words used. *Id.; General State Authority v. Coleman Cable & Wire Co.,* 27 Pa. Commw. 385, 365 A.2d 1347 (1976).

Applying this standard to the wording in question, it is clear that Mrs. Donato did not obligate her mother's estate to provide Mrs. Kalina with any statement concerning the structural soundness of the termite-infested areas of the house, for the sole purpose of the above language was to set forth J.C. Ehrlich's limited duties in its role of exterminator of termite infestation to the estate of Roma S. Lattemann and to exclude from its contractual duties with Mrs. Donato any responsibility to determine the extent of any structural damage, as follows:

"*IMPORTANT*

"Read This Report Carefully For A Complete Scope And Limitations Of The Inspection And Report.

"A representative of this company has conducted an inspection to determine, when possible, visible evidence of infestation from termites or other wood-destroying insects and/or damage resulting from their infestation. This report is limited to and indicative of the conditions visually observed on the date of the inspection and is not to be construed as a guarantee or warranty against current or future wood-destroying insect activity and/or damage. Any treatment or service warranty, should it be offered, is provided as a separate service agreement with specific provisions outlined in a separate document from this report.

"Inspection for this report was made in only those areas which were readily accessible and in areas where infestations are most likely to occur. No inspection was made in areas with no access or which required the breaking apart, dismantling, removal of any object including, but not limited to, mouldings, floor coverings, wall coverings, siding, ceilings, insulation, floors, furniture, appliances, and/or personal possessions. . . .

"This Is Not A Structural Damage Report

"A wood-destroying insect inspector is not ordinarily a construction or building trade expert and, therefore, is not expected to possess any specific qualifications which enable him to detect the extent of structural damage. If damage or other evidence of wood-destroying insects is noted in this report, the property owners/its agent, or purchaser should seek further investigation by qualified experts in the building trade to determine structural soundness of the building.

"The inspection firm does not and cannot advise as to the presence or absence of any other damage to the premises including, but not limited to, damage caused by fire, water, rot, fungi, moisture, humidity, flood, leaks, or storms.

"The inspection firm is not responsible for repairs to damages disclosed by this inspection.

"In addition, hidden damage may exist in concealed or inaccessible areas. This company cannot guarantee that the damage disclosed by visual inspection of the structures as noted, represents all of the damage which may exist as of the date of the inspection, and shall not be responsible for repair of any existing damage including, without limitation, any damage which existed in areas or in structural members which were accessible or inaccessible for inspection as of the date of this report."

Furthermore, even assuming, arguendo, that the report somehow would have obligated Mrs. Donato to provide such a statement to Mrs. Kalina as a third party beneficiary of the J.C. Ehrlich contract with Mrs. Donato or otherwise, Mrs. Kalina either waived this benefit or at the very least failed to enforce her rights to such a statement because the record is equally clear that she did not read the written report despite the fact that it was gratuitously given to her by Mr. Donato at the real estate closing (N.T., deposition of Marion E. Kalina, pp. 17, 19, 20, 70 and 71) and that she did not read the J.C. Ehrlich report until April 1995, when she says she first learned of the presence of active termite infestation under the living room floor. (N.T., deposition of Marion E. Kalina, p. 71.)

Furthermore, at no time prior to the real estate closing did Mrs. Kalina consider having her own building or construction expert examine the house to identify termite infestation even though Mr. Donato had informed her of the termite problems encountered in the basement closet and kitchen which adjoined the living room. (N.T., deposition of Marion E. Kalina, p. 21.) We have also considered the fact that, pursuant to paragraph 15(a) of the agreement of sale signed by Mr. and Mrs. Kalina and Mrs. Donato, the Kalinas agreed to purchase the property as a result of their own inspection and not

because of or in reliance upon representations by others, and the Kalinas were likewise advised that they may require or wish to seek the assistance of others in the construction, engineering, or environmental fields. This paragraph reads as follows:

"Representations And Maintenance: (a) It is understood that buyer has inspected the property, or hereby waives the right to do so and has agreed to purchase it as a result of such inspection and not because of or in reliance upon any representation made by the seller or any other officer, partner or employee of seller, or by the agent, subagent, if any, of the seller, their salespeople and employees, officers and/or partners. The buyer has agreed to purchase it in its present condition unless otherwise specified herein and further acknowledges that the aforementioned parties are not qualified to render an opinion on construction, engineering, or environmental matters and that the buyer has been advised that buyer may require or wish to seek the assistance of experts in those fields."

Therefore, based upon the foregoing, as well as the fact that Mrs. Kalina has failed to identify any evidence to the contrary in her written response to this summary judgment motion, we conclude that Mrs. Donato is entitled to judgment on this breach of contract claim as well.

Next, we turn to the claims filed by the appellant against Mr. Donato and his employer, Hayward Stout Inc. We begin by referring once more to Mrs. Kalina's deposition testimony, as quoted earlier in this memorandum opinion, where she admits that Mr. Donato told her about the termite infestation and damage to the kitchen floor and the basement closet. (N.T., deposition of Marion E. Kalina, pp. 11-13.)

Furthermore, Mrs. Kalina admitted that there was no conversation with him or anyone else about any other areas of the house or that Mr. Donato had any

knowledge of termite infestation in these other areas. (N.T., deposition of Marion E. Kalina, p. 16.) She also stated that she did not notice any signs of any active infestation anywhere other than the kitchen and basement closet until April 1995. (N.T., deposition of Marion E. Kalina, p. 23.) In short, Mrs. Kalina has failed to identify any evidence which would allow a fact-finder to conclude that Mr. Donato knew of active termite infestation in other areas of the house, including the living room, but fraudulently failed to disclose it to her prior to the closing. (N.T., deposition of Marion E. Kalina, p. 66.) In support of this determination, we refer to the following testimony from Mrs. Kalina:

"Q. The damage you found in 1995, you saw evidence of the damage when they tore up the floor and you could see the shredded wood. Do you know whether that damage occurred prior to October 1993, when you bought the house? Do you have any facts that would— that would let you know that that occurred prior to that time?

A. How would I know?

Q. But you can't really know if the damage occurred between October '93—from October '93 to 1995?

A. No.

Q. You don't know?

A. No." (N.T., deposition of Marion E. Kalina, pp. 55-56.) . . .

"Q. Mrs. Kalina,—what evidence do you have or what facts do you have that would establish that Mr. Donato knew in 1993 that there was damage to this house that he wasn't disclosing to you?

A. Again, I'll say because it was his in-laws. They were in—he should have known. They were there, however, many times visiting and taking care of Ion's mother.

Q. Okay. What other—

A. I'm sure they wouldn't keep a secret like that. It was obvious.

Q. Okay. What other facts do you have that would establish that Mr. Donato knew that there was damage to this house that existed in 1993 that he didn't disclose to you?

A. I'm still not—I keep going back to the same thing.

. . .

Q. Mrs. Kalina, I believe you testified earlier that you' re not aware of any—that you don't know whether the damage to the house occurred prior to September 1993 or from sometime in September 1993 to April 1995. Do you remember your testimony?

A. Yes.

Q. You said you don't know when that damage occurred?

A. Yes. . . .

Q. Do you have any other facts that would lead you to believe that there was other damage to the living room back in 1993 that Mr. Donato knew about and didn't fix?

A. I have no knowledge of it, no.

Q. Okay. How about anywhere else in the house? Do you know of any other—do you have any other facts that would suggest Mr. Donato knew there was any other damage that he said he did not fix?

A. He only told me he fixed the kitchen and down the steps. That's all he told me and I didn't say, did you do anything else? Did you—you know, I didn't—

Q. I'm sorry. Go ahead.

A. Delve into it. I didn't question him. . . .

Q. But you agree with me, you don't have any facts that would suggest or would establish that Mr. Donato knew there was additional damage back in 1993 that he didn't fix. Do you agree with that statement?

A. I have to." (N.T., deposition of Marion E. Kalina, pp. 62-66.)

What Mrs. Kalina points to instead in support of her claim against Mr. Donato and his employer is as

stated in an affidavit which she executed on September 30, 1997, in response to this summary judgment motion in which she states that:

"(1) On October 4, 1993, at settlement of the property at 4009 6th Avenue, Temple, PA, I was handed a copy of the wood-destroying insect inspection report by the seller's attorney.

"(2) The attorney explained to me what the paper was.

"(3) I did not read the report through from beginning to end.

"(4) I did read the typewritten entries on the form however, and recall Frank Donato drawing my attention to the entry describing the location of the observed insect damage and stating that the report just confirmed what he had previously told me, *i.e.,* that the termite damage was in the kitchen and basement.

"(5) I turned the report over, and glanced at the back. I noticed that there were no typewritten entries and I signed the report. I then handed it to my husband."

The summary judgment court record reveals that Mrs. Kalina signed the report only as an "acknowledgment" that she had read and understood the information contained in the report and not that she signed it because of any financing or other contingency in the agreement of sale. (See also, N.T., deposition of Marion E. Kalina, p. 18 and N.T. , deposition of Frank Donato, pp. 47-49.)

She argues that her affidavit shows that Mr. Donato, by handing the report to her, once again misrepresented the nature and extent of the termite damage in the house. We disagree. It does not show any misrepresentation by Mr. Donato at all. Rather, if anything, it demonstrates that Mr. Donato was once again going out of his way to make sure that the Kalinas were aware of the termite damage in the kitchen and basement, which was precisely what he had told her on the day she executed the agreement of sale.

Moreover, when we examine the summary judgment court record, we find uncontradicted evidence that Mr. Donato not only provided the Kalinas with a copy of J.C. Ehrlich's report on the day before or, at the very latest, the day of the real estate closing but that he also asked Mr. or Mrs. Kalina whether they had any questions about it.[3] And Mrs. Kalina said "no" because she had contacted J.C. Ehrlich prior to the day that the Kalinas had received the J.C. Ehrlich report to make sure that "everything was resolved." (N.T., deposition of Frank Donato, p. 47.)

It is clear, therefore, from reviewing this summary judgment court record that there is no evidence which, if proven at trial, would allow a fact-finder to conclude that either Mr. Donato or his employer, Hayward Stout Inc., were aware of any active infestation in the living room, let alone that there was anything fraudulently misrepresented to Mrs. Kalina at that or any other time.

Accordingly, we find that Mr. Donato and his employer, Hayward Stout Inc., are entitled to summary judgment relative to Mrs. Kalina's claims against them for fraudulent misrepresentation and for the alleged violation of section 2-201(xxi) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

Finally, we turn to Mrs. Kalina's claims against J.C. Ehrlich, in which the exterminator contends that it is entitled to summary judgment because Mrs. Kalina cannot identify any evidence in the summary judgment court record which, if proven at trial, would allow a fact-finder to conclude that she justifiably relied on its report in any way in the purchase of this house.

---

3. Our review of the J.C. Ehrlich report reveals nothing which would lead anyone to believe that termite infestation had occurred in other areas of the house other than the kitchen floor and basement closet.

We repeat that Mrs. Kalina testified during her deposition that neither she nor her husband read J.C. Ehrlich's report, let alone relied upon it, prior to purchasing the property. Her exact words are:

"Q. Settlement, okay. Was that the first time you saw exhibit 1 there, that document? [Referring to the Ehrlich wood-destroying insect inspection report.]

A. Yes.

Q. Okay. You have not seen it beforehand?

A. No. . . .

Q. When that paper was given to you, did you read it?

A. No, no. . . .

Q. Do you know if your husband read that paper?

A. No, I know he didn't." (N.T., deposition of Marion Kalina, pp. 18-19.)

Interestingly, this is in direct conflict with the averments made by Mrs. Kalina in her September 30, 1997, affidavit in which she says in paragraph 6 that she "felt reassured *by the report* that the termite problems with the property were indeed limited to what I had been told previously." (emphasis added)

Moreover, Mrs. Kalina testified that prior to attending the real estate closing that neither she nor her husband had ever communicated with J.C. Ehrlich relative to its treatment of the house or the preparation of J.C. Ehrlich's report:

"Q. Up to—up to this point where you're closing on settlement on the home, October 4, 1993, had you spoken to anyone from J.C. Ehrlich?

A. No.

Q. And I know you had treatment from Ehrlich or inspections at your old house on Church Street, but I am talking about dealing with this house here is Temple.

A. No, I didn't.

Q. Do you know if your husband Andy had talked to anyone?

A. No, not Andy. . . .

Q. You're firm in your recollection, you're absolutely certain you didn't talk to anybody from Ehrlich before you settled on the house—before you settled?

A. No, I didn't.

Q. You didn't have any contact with anybody at Ehrlich?

A. No, honest.

Q. Did you call them up and ask them any questions?

A. No, not once. I never did." (N.T., deposition of Marion Kalina, pp. 21, 46.)[4]

And so, it is clear that there is no evidence in the summary judgment court record from which a fact-finder could conclude that Mrs. Kalina justifiably relied upon J.C. Ehrlich's report. As a result, we conclude that J.C. Ehrlich is entitled to summary judgment on Mrs. Kalina's claim of negligent misrepresentation, as well as her claim against J.C. Ehrlich under the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

Simply put, Mrs. Kalina has failed to demonstrate that she has a claim worthy to go to a jury for she has not adduced sufficient evidence which would allow a fact-finder to reach a verdict in her favor on any of her claims against the appellees. Therefore, we re-affirm our order granting summary judgment in favor of all of the appellees on each and every claim made by Mrs. Kalina and respectfully urge the Superior Court of Pennsylvania to agree that there are no genuine issues worthy of a trial by denying her appeal.

---

4. Although this testimony may appear to create an issue of fact as to whether Mrs. Kalina had been in contact with J.C. Ehrlich prior to the real estate closing, based upon Mr. Donato's testimony (N.T., deposition of Frank Donato, p. 47) as set forth earlier in this memorandum opinion to the contrary, such a fact is not material to the outcome of Mrs. Kalina's claim against J.C. Ehrlich and, therefore, cannot be a basis for denying summary judgment.