641 A.2d 1287

Marsha A. KOEHLER, Appellant,

v.

CITY OF GREENSBURG.

Commonwealth Court of Pennsylvania.

Submitted March 2, 1994.

Decided May 10, 1994.

Alex E. Echard, for appellant.

Suzanne B. Merrick, for appellee.

Before CRAIG, President Judge, and COLINS, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

PELLEGRINI, Judge.

Marsha A. Koehler (Koehler) appeals from an order of the Court of Common Pleas of Westmoreland County granting summary judgment in favor of the City of Greensburg (City) and dismissing her complaint against the City.

Koehler worked as a secretary for the City's Zoning and Planning Department from January of 1984 until she was terminated on December 29, 1989. Because her position was not certified as part of the collective bargaining unit and not covered by civil service, Koehler was an "at will" employee. In the summer of 1989, Koehler informed R. Edward Jackson, the City Administrator and someone she considered a personal friend, that she no longer resided in Greensburg, but had moved with her husband to Mt. Pleasant Township. In 1986,

Greensburg City Council amended its existing ordinance pertaining to residency and required all City employees to be City residents.[1]

As a result of informing Jackson that she was no longer a City resident, she was subsequently called into a meeting with the City Solicitor and Jackson where she was informed that because she was no longer a City resident, she was going to be discharged from her employment. On November 30, 1989, Koehler received a letter signed by the City Administrator informing her that her employment was being terminated effective December 29, 1989, at 4:00 p.m.

Koehler filed an action against the City alleging that her termination based on the residency requirement was an abuse of discretion because the City had completely ignored the residency requirement for other employees. She amended her complaint to also allege that her discharge was a result of improper "political reasons". Specifically, she argued that her discharge was the result of Mayor Fajt (Mayor) and certain members of City Council conspiring to terminate existing employees of the City for the purpose of creating vacant positions.[2] She further argued that positions were to be filled with political supporters of the Mayor in violation of her right of freedom of speech, expression and association as guaranteed by the First and Fourteenth Amendments of the United States Constitution. The City filed a motion for summary judgment which the trial court granted. This appeal by Koehler followed.

■ A motion for summary judgment may properly be granted only if the pleadings, depositions, answers to interrog-

1. The original ordinance required residency as a condition of employment, but also gave City employees the option of simply owning real estate within the City to meet the residency requirement. The amendment to that ordinance deleted that option, and specifically required that employees of the City were to be residents of the City throughout their terms of employment. It also required any newly hired nonresident to become a resident within 90 days of commencing employment.

2. Mayor Fajt, who was elected in January of 1988, replaced Mayor Brown.

atories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[3] *See* Pa.R.C.P. No. 1035(b); *Mann v. City of Philadelphia,* 128 Pa.Commonwealth Ct. 499, 563 A.2d 1284 (1989); *petition for allowance of appeal denied,* 525 Pa. 622, 577 A.2d 892 (1990). Koehler contends that the trial court erred in granting summary judgment because issues of material fact still exist.[4] Specifically, she argues that she was fired for failing to support the Mayor's candidacy, and that failure evokes public policy considerations sufficient to permit her to maintain an action for wrongful discharge.

■ In a public employee's claim of retaliation by a public employer for engaging in a protected activity, the plaintiff must show that the activity in question was protected and that the protected activity was a substantial factor in the alleged retaliatory action. Once the plaintiff makes that showing, the defendant may defeat the plaintiff's claim by "demonstrating that the same action would have taken place even in the absence of the protected conduct." *Czurlanis v. Albanese,* 721 F.2d 98, 103 (3d Cir.1983).

Here, Koehler is contending that the protected speech that caused her retaliatory firing was her non-support of the current Mayor when he was running for office. In effect, she is arguing that the protected activity being violated is her First Amendment right not to be retaliated against for not supporting a political candidate. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Koehler does not claim that she was discharged because the

3. The only deposition taken was that of Koehler. The facts in this opinion are taken solely from her deposition. Because Koehler, as the plaintiff, was the only party to offer testimony, and there were no other depositions or counter-affidavits filed, the facts as she recounts them are undisputed for the purpose of reviewing the trial court's grant of summary judgment.

4. Our scope of review of the grant of summary judgment is limited to determining if the trial court erred as a matter of law or abused its discretion. *Kelly v. Curwensville Area High School,* 141 Pa.Commonwealth Ct. 449, 595 A.2d 787 (1991).

Mayor was a member of one political party and she of another. In her deposition, Koehler testified:

Q. Are you a registered voter?

A. Yes.

Q. And under what party? Are you affiliated with a particular party?

A. I'm registered as a republican.

Q. Okay. The present Mayor Fajt, is he a republican or a democrat; do you know?

A. Well, I think he's a democrat; isn't he? I don't know. When I go to vote, I just vote for whoever. I don't really think about the parties. I don't know. That's probably not the way you're supposed to be, but I just vote who I like I guess.

Q. Had you ever been involved with politics?

A. No I don't—no. That's why I guess I really don't know who's what.

Q. Okay. Have you ever assisted in a campaign for a particular politician?

A. No, I never got involved.

Q. Have you ever contributed financially to a politician?

A. No.

Q. Okay. Has anyone ever asked you to work on their campaign or—?

A. No.

Q. While you were employed by the City of Greensburg, did you receive any solicitations or did anybody put any pressure on you to campaign on their behalf or give them money or become politically active on behalf of a particular person?

A. No.

Q. Did the current Mayor ever ask you to campaign on his behalf or give him money, this Mayor, Fajt?

A. No.

\* \* \* \* \* \*

Q. Okay. What political party was Mayor Brown [the prior Mayor]?

A. Scott Brown, I guess, he was a republican. I don't know. I really don't—like I said, I just—. When I vote I vote for my own personal opinion, I guess.

Being politically unaware, Koehler's argument is that she was discharged not for anything that she did, but because she failed to support the new Mayor, in violation of her First Amendment rights. She has failed, however, to give any factual basis to establish that her lack of support for the Mayor was a substantial factor or, for that matter, *any* factor in her termination. Nowhere in Koehler's deposition does she show that her political unawareness caused her to be terminated. She does not claim that anything she said or did not say came to the attention of the Mayor or some members of City Council who were the Mayor's supporters or that the Mayor or members of City Council made any statements due to her lack of support. Koehler testified that she got along well with the City Administrator and that her supervisors gave her good ratings, even after the new Mayor took office. Koehler did testify that volunteer firefighters had the Mayor's ear, but never shows how that influence or her lack of political activity impacted in any way on the City's decision to terminate her.

Not only is there nothing in the record to establish that she was terminated in violation of her First Amendment rights, but Koehler's own testimony as to the reason she was terminated establishes that she was not terminated for not supporting the Mayor. In her deposition, she stated that she thought the Police Chief wanted to transfer his secretary to another position and that her termination for non-residence gave them the opportunity to do so. She testified:

Q. Okay. In paragraph 18, now you say that your attorney wrote that newly elected Mayor Fajt conspired with certain council members to, I'm paraphrasing this, okay, to accomplish the removal of certain existing employees of the City of Greensburg for the purposes of making available monies to fund wage of benefit increase for political sup-

porters of Fajt. Do you know what council members he conspired with?

A. Well, I think Emil Peterinelli, John Finfrock, at the time Buddy—I don't think—well, Buddy Mertz.

Q. Now, what is your basis for alleging that he conspired with these people?

A. Well, I think that Vicky Robinson who was working in the Police Department—I think she saw too much, heard too much and threatened to say different things. And I think that the chief of police felt threatened by her and he wanted her out of his office. Because I think he felt that in the future she would make trouble for him and he wasn't comfortable with her in there. And I think that's one of the reasons why whenever they found out that I was—that—had purchased property outside the City, this was their perfect opportunity for having a job opening in the planning and zoning office because they could put Vicky up there. And that would get her out of the Police Department.

Moreover, in her deposition, she admitted that she surmised this and had no first-hand knowledge that this was so. Even if this testimony rises above the level of office gossip, because Koehler's termination allowed the Police Chief to move his secretary when Koehler was terminated for "just cause", i.e., nonresidence, it is not a violation of anyone's civil rights, just fortuitous.

While Koehler may have pled sufficient facts to maintain an action for violation of her First Amendment rights, the trial court's grant of a motion for summary judgment was proper because the undisputed facts show that she has not set forth any evidence that her discharge was for any other reason than non-residence. Accordingly, the decision of the trial court granting summary judgment is affirmed.

## ORDER

AND NOW, this 10th day of May, 1994, the order of the Court of Common Pleas of Westmoreland County dated March 17, 1992, No. 9602 of 1989, is affirmed.

FRIEDMAN, J., concurs in the result only.