**Cook v. New Castle Area Sch. Dist.**

34

C.P. of Lawrence County, No. 11973 of 2007.

*Jonathan Solomon*, for plaintiff.
*Diego Correa,* for defendants.

COX, *J.*, July 15, 2011—Before the court for disposition

is the motion for summary judgment filed on behalf of the defendants New Castle Area School District, George Gabriel, Fred Mozzocio and Paul A. Fulena, in which they argue the following:

I. The plaintiff did not properly transfer this matter from Federal Court to the Court of Common Pleas in accordance with 42 Pa.C.S.A. §5103(b);

II. The plaintiff is precluded from relitigating his claim of retaliation by the doctrine of collateral estoppel because that issue was already decided in Federal Court;

III. The plaintiff has failed to establish a causal relationship between the plaintiff's speech and any action by the New Castle School District that was adverse to the plaintiff's employment;

IV. Any limitation on speech that occurred in this matter was permissible as a matter of law; and

V. The plaintiff's claim for attorney fees or other monetary damages is not recognized in actions brought pursuant to the Pennsylvania Constitution.

At oral argument, the plaintiff withdrew all claims against George Gabriel and Paul A. Fulena regarding a newly-created custodial position, so the motion for summary judgment is granted as to George Gabriel and Paul A. Fulena.

The plaintiff Daniel Cook has been employed by the New Castle Area School District (hereinafter "NCASD") as a custodian since 1986. Additionally, the plaintiff was

involved in local politics, which included installing signs in yards, distributing campaign literature, working at the polls, arranging social gatherings and soliciting campaign contributions for candidates. It must be noted that the plaintiff did campaign work during the 2007 primary election for the defendant Fred Mozzocio, who is a member of the Board of Directors of the NCASD and was board president from December 2004 until December 2007.

The plaintiff later decided that he would support three female candidates for election to the NCASD Board of Directors in the general election. The names of those candidates were Andrea Przybylski, Mary Ann Tofel and Barbara Razzano. The general election was held on November 6, 2007. On the morning of the election, the plaintiff asked Jackie Trott, a cafeteria worker, which candidates she was supporting for school board. The plaintiff informed Ms. Trott he was supporting "the girls", referring to Ms. Przybylski, Ms. Tofel and Ms. Razzano. Subsequently, Ms. Trott informed him that she was going to work at the polls at Croton United Methodist Church for Mr. Mozzocio once she finished her work shift. Mr. Cook was on his break at the time of the conversation with Ms. Trott, but there is no evidence produced by the plaintiff to establish that Ms. Trott was also on her break. Later that morning, Andrew Gangliero, the principal at George Washington Intermediate School, approached the plaintiff in the hallway and notified him that Mr. Mozzocio called the school in reference to the plaintiff's conversation with Ms. Trott. Mr. Gangliero then informed the plaintiff that Mr. Mozzocio said, "if Dan Cook didn't stop talking about him and the election with the girls in the kitchen, he was going to come up to the school to see Mr. Cook, and things

could get ugly." The plaintiff immediately informed Mr. Fulena and Mr. Gabriel about the remark but no action was taken by either individual or any other party or entity. Also, there was no evidence produced that Mr. Mozzocio came to the school or that any other comments were made, nor did the plaintiff produce any evidence that his political activities were curtailed or his employment affected in any manner.

Initially, the plaintiff filed suit in state court for claims under 42 U.S.C. §1983 and Article I, Section 7 of the Pennsylvania Constitution for violations of the plaintiff's right to free speech. However, the defendants removed the case to the United States District Court for the Western District of Pennsylvania. On December 16, 2008, Federal District Court Judge Gary L. Lancaster rendered a decision to dismiss the 42 U.S.C. §1983 claim and ruled that the defendants were permitted to limit that type of speech under federal law, but the court declined to exercise its supplemental jurisdiction over the state law claim for a violation of Article I, Section 7 of the Pennsylvania Constitution. The plaintiff appealed that decision to the United States Court of Appeals for the Third Circuit. That court affirmed the ruling of the Federal District Court and reasoned that the statement made by Mr. Mozzocio was at most a verbal reprimand which was not retaliatory conduct that adversely affected the plaintiff's First Amendment rights under the United States Constitution. The Third Circuit Court of Appeals did not address whether Article I, Section 7 of the Pennsylvania Constitution applied to the current case. On January 21, 2009, the plaintiff filed a Certification of Transfer under 42 Pa.C.S.A. §5103(b)(2), to which he attached a copy of the docket entries from

Federal District Court and a complaint containing the claim under article I, section 7 of the Pennsylvania Constitution to return the case to state court. The defendants have now filed a motion for summary judgment.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa. Super. 2000). The mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. The summary judgment rule exists to dispense with a trial of a case or, in some matters, issues in a case, where a party lacks the beginnings of evidence to establish or contest a material issue. *Ertel v. Patriot-News Company*, 544 Pa. 93, 674 A.2d 1038 (1996), reargument denied, (1996), certiorari denied, 519 U.S. 1008 (1996).

Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2. However, summary judgment is only appropriate when discovery relevant to the motion has been completed. *Id.* Summary judgment may be granted only in cases where it is clear

and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando v. Erie Ceramic Arts Co.,* 764 A.2d 59, 61 (Pa. Super. 2000) (citing *Rush v. Philadelphia Newspaper. Inc.,* 732 A.2d 648, 650-651 (Pa. Super. 1999)).

The moving party bears the burden of proving the non-existence of any genuine issue of material fact. *Kafando,* supra. A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Shincor Silicones. Inc.,* 756 A.2d 697 (Pa. Super. 2000); *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662 (Pa. Super. 2000). The non-moving party must adduce sufficient evidence on issues essential to his case on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ertel* supra. The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. *DeSantis v. Frick Company,* 745 A.2d 624 (Pa. Super. 1999); *Merriweather v. Philadelphia Newspaper, Inc.,* 453 Pa. Super. 464, 469-472, 684 A.2d 137, 140 (1996).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm, Inc.,* 563 Pa. 501, 752 A.2d 339 (2000); *Dean v. Commonwealth Department of Transportation,*

561 Pa. 503, 751 A.2d 1130 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n,* 555 Pa. 149, 153, 723 A.2d 174, 175 (1999); *Basile v. H&R Block,* 761 A.2d 1115 (Pa. Super. 2001); *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662 (Pa. Super. 2000); *Stevens Painton Corporation v. First State Insurance Company,* 746 A.2d 649 (Pa. Super. 2000).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Basile,* supra. If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be granted. *Dudley v. USX Corporation,* 414 Pa. Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer,* 783 A.2d 815 (Pa. Super. 2001). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore,* 152 Pa. Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission,* 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

The first issue the court will address is the defendants' claim that the plaintiff is precluded by the doctrine of collateral estoppel from raising his claim under Article I, Section 7 of the Pennsylvania Constitution as that issue was previously decided by the Federal District Court and the Third Circuit Court of Appeals.

Collateral estoppel is also known as "issue preclusion," and it means that an issue, whether it is of law, fact or evidence, has been determined by a valid and final judgment and it cannot be litigated again by the same parties. *Commonwealth v. Holder*, 569 Pa. 474, 479, 805 A.2d 499, 502 (2002). "[F]or the doctrine of collateral estoppel to apply it must appear that the fact or facts at issue in both instances were identical; that these facts were essential to the first judgment and were actually litigated in the first cause." *Schubach v. Silver*, 461 Pa. 366, 377, 336 A.2d 328, 334 (1975). Pursuant to that doctrine, factual and legal determinations are conclusive between the parties in any action subsequent to the original decision. *Erisco Industries. Inc. v. W.C.A.B. (Luvine)*, 955 A.2d 1065 (Pa. Cmwlth. 2008) (citing *Mason v. Workmen's Comp. Appeal Bd. (Hilti Fastening Sys. Corp.)*, 657 A.2d 1020 (Pa. Cmwlth. 1995)). Collateral estoppel may only be applied if:

(1) the issue decided in the prior adjudication was identical with the one presented in the later action,

(2) there was a final judgment on the merits,

(3) the party against whom the plea is asserted was a party...to the prior adjudication, and

(4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *Lamborn v. W.C.A.B. Armoroso Baking*, 656 A.2d 593, 595 (Pa. Cmwlth. 1995) (citing *Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574-575, 345 A.2d 664, 668 (1975)).

The doctrines of res judicata and collateral estoppel should be liberally construed and applied without technical restriction and should not be defeated for minor differences in form, parties or allegations. *McArdle v. Tronetti*, 426 Pa. Super. 607, 612, 627 A.2d 1219, 1222 (1993). Collateral estoppel prevents a party from litigating an issue it previously litigated unsuccessfully in another action. *Shaffer v. Smith*, 543 Pa. 526, 529, 673 A.2d 872, 874 (1996).

In the current matter, the doctrine of collateral estoppel does not apply as the Federal District Court and Third Circuit Court of Appeals did not address the specific issue raised by the plaintiff's complaint. The opinions written by both federal courts specifically address the plaintiff's 42 U.S.C. §1983 claim, which is based on federal law. However, the district court declined to rule upon the plaintiff's retaliation claim based on Article I, Section 7 of the Pennsylvania Constitution. In addition, the Third Circuit Court of Appeals did not address the applicability of Article I, Section 7 of the Pennsylvania Constitution. Both courts ruled that Mr. Mozzocio's remark was not a violation of the First Amendment of the United States Constitution; but, they refrained from addressing the plaintiff's claim regarding a violation of the Pennsylvania Constitution. Therefore, the plaintiff's retaliation claim

based upon article I, section 7 has not been addressed previously and must be addressed by this court. The defendants' motion for summary judgment regarding collateral estoppel is denied.

The defendants argue that the plaintiff has failed to set forth a valid claim for retaliation pursuant to Article I, Section 7 of the Pennsylvania Constitution. More specifically, the defendant asserts that the plaintiff has not established a causal connection between the plaintiff's speech and any adverse action taken by any of the defendants. Moreover, the defendants contend that any limitation on speech which occurred in this matter was permissible as a matter of law.

The plaintiff argues that Article I, Section 7 of the Pennsylvania Constitution provides greater protections than the First Amendment of the United States Constitution. The Pennsylvania Supreme Court has stated generally that Article I, Section 7 of the Pennsylvania Constitution provides greater protections to speech and conduct than the First Amendment of the United States Constitution, but there was no explanation regarding the scope of the greater protections provided by the Pennsylvania Constitution. *Melvin v. Doe*, 575 Pa. 264, 273, 836 A.2d 42, 47 fn. 9 (2003). The court did not discover any precedent indicating that the greater protections provided by Article I, Section 7 of the Pennsylvania Constitution applies to cases in which a plaintiff is asserting a claim for retaliatory actions in response to political statements made by a public employee during working hours. It must also be noted that the plaintiff did not present this court with any case law indicating that the Pennsylvania Constitution provides

greater protection in that area. Moreover, an appellate court in Pennsylvania has relied upon the established federal court precedent to decide a retaliation claim. See *Koehler v. City of Greensburg*, 164 Pa. Cmwlth. 53, 56, 641 A.2d 1287, 1289 (1994). As there is no legal precedence under the Pennsylvania Constitution expanding the protections in this area, this court is compelled to decide this case based on the standards set forth by the United States Constitution and the existing case law.

Article I, Section 7 of the Pennsylvania Constitution states in part, "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." A person does not lose his right to free speech merely because he or she is a public employee. *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 415-416, 99 S. Ct. 693, 696-697 (1979). It is incumbent upon the courts to render a decision taking into account the interest of the public employee as a citizen to comment upon matters of public concern and the interest of the state as the employer to promote efficiency of the public services it performs through its employees. *Pickering v. Board of Ed. Of Tp. High School Dist.* 205, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734 (1968)[1]. "Whether an employee's speech addresses a

---

1. In *Pickering*, the court held that the Board of Education violated a teacher's First Amendment rights where the teacher was dismissed for writing a letter to the editor published in the newspaper criticizing the manner in which the school board handled raising funds for two new schools because that letter to the editor did not affect the daily work duties of the teacher. *Pickering*, 391 U.S. 563, 88 S.Ct. 1731. It must be noted that *Pickering* is dissimilar to the current matter because that letter to the editor was written outside of school hours and in this case the plaintiff's statements to Ms. Trott were made during the normal

matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-148, 103 S. Ct. 1684, 1690 (1983). It has been determined that speech regarding internal personnel disputes and working conditions does not touch upon matters of public concern; however, speech regarding political elections does encapsulate matters of public concern. *Curinga v. City of Clairton*, 357 F.3d 305, 313 (3d Cir. 2004); See also *Bass v. Richards*, 308 F.3d 1081, 1089 (10th Cir. 2002) (citing *David v. City & County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996); *Craig v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998)). In order to prove a claim for retaliation for the exercise of an employee's right to free speech, the plaintiff must establish: "(1) [the plaintiff] engaged in a protected activity; (2) the defendants responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her rights; and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003); *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006); *Weixel v. Bd. of Educ. Of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)). Other factors for the court to consider in rendering its decision are as follows:

1. Whether, because of the speech, the government agency is prevented from efficiently carrying out its responsibilities;

---

operating hours of the school.

2. whether the speech impairs the employee's ability to carry out his own responsibilities;

3. whether the speech interferes with essential and close working relationships;

4. the manner, time and place in which the speech occurs;

5. whether the speaker was in a position in which the need for confidentiality was so great as to justify dismissal for even completely accurate public statements;

6. whether narrowly drawn grievance procedures required submission of complaints about the operation of the agency to superiors for action prior to taking complaints to the public; and

7. whether a statement that was knowingly or recklessly false, if it were neither shown nor could reasonably be presumed to have harmful effects, would still be protected by the First Amendment. *Sacks v. Commonwealth Dept. of Public Welfare*, 502 Pa. 201, 465 A.2d 981 (1983) (citing *Connick*, 461 U.S. 138, 103 S. Ct. at 1691-1694, 75 L. Ed. 2d 708 (1983); *Pickering*, supra.).

Determining whether a public employee's free speech rights were violated by retaliatory conduct is a fact intensive inquiry where the court must focus on the status of the public employee and the status of the retaliator in association with the nature of the retaliatory acts. *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (citing *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). Moreover, "courts have declined to

find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Id.* It is apparent that verbal reprimands alone are insufficient to establish a retaliation claim; however, adverse decisions regarding employment status and advancement are sufficient. *Griffin v. Township of Clark*, 2011 WL 1546910 (D.N.J. 2011). In *Griffin*, the court determined testimonial evidence that the plaintiff was denied requests for overtime and outside work opportunities were sufficient to establish a claim for retaliation. *Id.* Conversely, in *Smith v. Dept. of General Services, PA Capitol Police Bureau*, 2005 WL 1563505 (M.D. PA. 2005), the court determined that the plaintiff's transfer to another shift, an accusation that the plaintiff lied during a predisciplinary proceeding, plaintiff's removal from his role in the Fraternal Order of Police, other officers placing cheese in the plaintiff's mailbox and calling him a "snitch" did not constitute a valid retaliation claim. The *Smith* court reasoned that transferring the plaintiff would normally be sufficient for a retaliation claim, but the plaintiff requested to be transferred to the other shift knowing that it meant he would have to endure a $1.00 per hour pay decrease. *Id.* The court also stated that the accusation the plaintiff lied was deemed to be de minimis and the allegations regarding the Fraternal Order of Police, harassment by other officers and efforts to block written complaints were not actions taken by the named defendants. *Id.* Hence, the *Smith* court granted the defendants' motion for summary judgment because the plaintiff failed to establish that the defendants' actions were so severe that they constituted retaliation. *Id.*

In the case sub judice, the plaintiff has been employed by the NCASD as a custodian since 1986 and has been active in local politics as well, which included doing campaign work during the 2007 primary election for Fred Mozzocio during his bid to retain his seat as a member of the NCASD Board of Directors. It must be noted that Mr. Mozzocio previously was elected to the board of directors and served as board president from December 2004 until December 2007. The plaintiff decided that he would support Ms. Przybylski, Ms. Tofel and Ms. Razzano for the NCASD Board of Directors in the general election held on November 6, 2007. On the morning of the election, the plaintiff asked Jackie Trott, a cafeteria worker, which candidates she was supporting for school board. The plaintiff informed Ms. Trott he was supporting "the girls", referring to Ms. Przybylski, Ms. Tofel and Ms. Razzano. Subsequently, Ms. Trott informed him that she was going to work at the polls for Mr. Mozzocio after concluding her work shift. This conversation occurred while the plaintiff was on his break, but there is no evidence to indicate that Ms. Trott was also on her break.

Later that morning, Andrew Gangliero, the principal at George Washington Intermediate School, approached the plaintiff in the hallway and notified him that Mr. Mozzocio called the school in reference to the plaintiff's conversation with Ms. Trott. Mr. Gangliero then informed the plaintiff that Mr. Mozzocio said, "if Dan Cook didn't stop talking about him and the election with the girls in the kitchen, he was going to come up to the school to see Mr. Cook, and things could get ugly." The plaintiff immediately informed Mr. Fulena and Mr. Gabriel about the remark.

Now, the plaintiff asserts that the remark made by Mr. Mozzocio was a retaliatory act aimed at stifling his ability to exercise his right to free speech under Article I, Section 7 of the Pennsylvania Constitution. It also seems as though the plaintiff is attempting to impart liability upon the NCASD for the statement made by Mr. Mozzocio because he was then president of the Board of Directors. However, it appears that the plaintiff did not suffer any adverse circumstances arising from Mr. Mozzocio's statement. There was no change in the plaintiff's employment position status, working conditions, his hours of employment and pay were not affected by the events that transpired on the day of the general election. Additionally, there is no evidence of an oral or written warning being issued that had an effect on the plaintiff's employment. Mr. Mozzocio did not take any further action regarding the plaintiff's comments and he never spoke directly to the plaintiff. The NCASD did not place any sanctions or restrictions upon the plaintiff and there is no evidence in the record indicating that the plaintiff refrained from engaging in political speech or activities after Mr. Mozzocio's statement. The plaintiff did not present any evidence demonstrating that he was fearful of being harmed or suffered retribution for his political activities. Moreover, the Federal District Court clearly held that the defendants could limit the type of speech utilized by the plaintiff. *Cook v. New Castle Area School District*, 08-0089, pg. 18-19 (W.D. Pa. 2008). The United States Court of Appeals for the Third Circuit found it unnecessary to address whether Mr. Cook's activities were protected by his right to free speech and determined that Mr. Mozzocio's response was merely a verbal reprimand, which is not actionable under a retaliation claim. *Cook v.*

*New Castle Area School District,* No. 2-08-cv-00089, pg. 6-7 (3d. Cir. 2009).

Unlike *Griffin,* where the plaintiff's requests for overtime and outside work opportunities were denied and thus sufficient to establish a claim for retaliation, the plaintiff in the current case did not suffer any adverse action relating to his current job. The plaintiff does not claim that he was denied other work opportunities or that his work environment was negatively affected in any manner. Similar to the accusation that the plaintiff lied in *Smith,* the statement by Mr. Mozzocio is deemed to be de minimis as the plaintiff's employment was not adversely affected. Analogous to the accusation in *Smith,* Mr. Mozzocio's statement "if Dan Cook didn't stop talking about him and the election with the girls in the kitchen, he was going to come up to the school to see Mr. Cook, and things could get ugly", was poorly worded and inappropriate in an employment environment. However, that does not mean that every type of inappropriate interaction between a supervisor or, as in this case, a member of a board of directors is actionable. According to the established precedent in this area, the plaintiff is required to demonstrate that his employment was negatively affected by the retaliatory actions. Hence, the plaintiff has failed to demonstrate that his employment conditions or rights to political speech were adversely affected by Mr. Mozzocio's remark of November 6, 2007.

For the reasons set forth in this opinion, the court grants the defendants' motion for summary judgment as to the NCASD and Fred Mozzocio because the plaintiff did not provide adequate evidence to support his retaliation claim.

As the court has granted summary judgment because the plaintiff's claim is legally insufficient, the court will not address the two remaining issues regarding the transfer of the case from federal court to state court and attorney's fees.

## ORDER OF COURT

Now this July 15, 2011, this case being before the court previously for oral argument on the motion for summary judgment filed by the defendants, with all parties appearing through counsel, the plaintiff Daniel Cook, represented by counsel, Jonathan Solomon, Esquire and the defendants New Castle Area School District, George Gabriel, Fred Mozzocio and Paul A. Fulena, represented through counsel, Diego Correa, Esquire and after careful consideration of the arguments and briefs presented and submitted by counsel and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. At the time of oral argument, the plaintiff withdrew his claims against George Gabriel and Paul A. Fulena and thus the motion for summary judgment is granted as to George Gabriel and Paul A. Fulena.

2. In accordance with the attached opinion, the motion for summary judgment involving the issue of whether the plaintiff was precluded from pursuing his claim based upon the doctrine of collateral estoppel is hereby denied.

3. In accordance with the attached opinion, the motion for summary judgment based upon the failure to establish a causal relationship between the speech and any adverse

action to the plaintiff's employment is granted.

4. The court will not address the remaining issues contained in the motion for summary judgment as it is unnecessary due to the granting of the motion for summary judgment.

5. The Prothonotary of Lawrence County is directed to enter summary judgment in favor of the defendants, New Castle Area School District, George Gabriel, Fred Mozzocio and Paul A. Fulena and against the plaintiff Daniel Cook.

6. The complaint filed by the plaintiff is dismissed with prejudice.

7. The Prothonotary is directed to serve a copy of this order of court upon counsel of record.